**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**FT. MYERS DIVISION**

BRIAN R. GLYNN,

      Plaintiff,

v.                                                                    CASE NO. 2:09-CV-585-FtM-36SPC

BASIL STREET PARTNERS, LLC, a
Delaware limited liability company,

      Defendant.
_____/

**ORDER**

**THIS CAUSE** is before the Court on Defendant's Motion to Dismiss the Second Amended Complaint and Motion for Attorneys' Fees, filed on November 12, 2010 (Dkt. 72). Plaintiff filed a response in opposition on November 15, 2010 (Dkt. 74). Defendant moves to dismiss Counts III and IV of the Second Amended Complaint[1] (Dkt. 40) pursuant to Federal Rules of Civil Procedure 12(b)(6) and 12(e). For the reasons stated below, the Court will deny Defendant's Motion to Dismiss and defer its ruling as to the Motion for Attorneys' Fees.

**I.    BACKGROUND**

As alleged in the Second Amended Complaint, Defendant Basil Street Partners, LLC is a developer of real property, known as The Hotel at Naples Bay Resort and The Marina Condominium at Naples Bay Resort, located in Collier County, Florida (Dkt. 40, ¶7). The Naples Bay Resort was

---

[1] Counts I and II of Plaintiff's First Amended Complaint were dismissed with prejudice on September 21, 2010 (Dkt. 39). However, Plaintiff did not re-number the remaining counts in his Second Amended Complaint. As such, the Court refers to them as Plaintiff has numbered them.

marketed as a hotel condominium that would include several components, including the Hotel and the Marina Condominiums (Dkt. 51, Ex. D, pp. 11-13).

As a result of Defendant's marketing efforts, Plaintiff signed a purchase agreement (the "Hotel Agreement") on May 25, 2005. *Id*. at ¶8; *see* Dkt. 41, Ex. A. The Hotel Agreement stated that the company would construct and sell to Plaintiff two units in the Hotel at the Naples Bay Resort, specifically Unit Numbers 1-308 and 1-310. *Id*. The Hotel Agreement also required Plaintiff to pay deposits totaling $241,250 of a combined purchase price of $965,000 for the two units. *Id*. at ¶9. Plaintiff paid the required deposits in full on September 28, 2005. *Id*.

On August 11, 2005, Plaintiff signed a second purchase agreement (the "Marina Agreement"), wherein Defendant agreed to construct and sell a condominium, Unit C-09, at the Marina Condominium at the Naples Bay Resort to Plaintiff. *Id*. at ¶10; *see* Dkt. 41, Ex. B. The deposit under the Marina Agreement was $63,650 of the total purchase price of $240,000. *Id*. at ¶11. Plaintiff paid this deposit on September 28, 2005. *Id*. at ¶12. On November 7, 2007, Plaintiff signed an amendment (the "Amendment") to the Marina Agreement, changing the purchased condominium from Unit C-09 to Unit B-28. *Id*. at ¶13; *see* Dkt. 41, Ex. C. With the change came an increase in the purchase price from $240,000 to $255,000. *Id*.

Plaintiff received several documents relating to the Hotel Agreement, Marina Agreement, and Amendment. *Id*. at ¶14. Among these documents were the Prospectus for the Hotel at Naples Bay Resort (Dkt. 43-51, Ex. D), the paperwork relating to the Club at Naples Bay Resort (Dkt. 52, Ex. E), the documentation for the Marina Condominium at Naples Bay Resort (Dkt 53-54, Ex. F), the Hotel Unit Rental Management Agreement (Dkt. 61, Ex. H), and the "Partnered for Success" document (Dkt. 63, Ex. I) (Dkt. 40, ¶14). All of these documents, along with the Hotel Agreement,

Marina Agreement and Amendment, constitute the offering plan for the investment operation. *Id*.

Purchasers of the condominiums were required to be members of The Club of Naples Bay Resort (Dkt. 40, ¶16; *see* Dkt. 51, Ex. D, p. 17). "The Club . . . include[s] a facility located on Keewaydin Island with a beach facility." *Id*. Defendant was unable to secure permits to develop the beach facility, and the existence of the beach facility was a "material inducement" to Plaintiff in executing the Hotel Agreement, Marina Agreement and Amendment (Dkt. 40, ¶17). Despite the failure to secure permits for the beach facility, Defendant still holds Plaintiff's deposits under the Agreements, which amount to $305,000. *Id*. at ¶18. As such, Plaintiff seeks a refund of the deposits that he has paid, plus attorney's fees as set forth in Paragraph 18 of the Hotel Agreement and Paragraph 17 of the Marina Agreement. *Id*. at ¶19.

## II.   STANDARD

To survive a motion to dismiss, a pleading must first comply with Fed. R. Civ. P. 8(a)(2) by including a "short and plain statement showing that the pleader is entitled to relief." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009). Labels, conclusions and formulaic recitations of the elements of a cause of action are not sufficient. *Id.* (citing *Bell Atlantic Corp, et al. v. Twombly, et al.*, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)). Mere naked assertions, too, are not sufficient. A complaint must contain sufficient factual matter, which, if accepted as true, would "state a claim to relief that is plausible on its face." *Id*. (quoting *Twombly*, 550 U.S. at 555). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (citation omitted). The court, however, is not bound to accept as true a legal conclusion stated as a "factual allegation" in the complaint. *Id*. at 1950. Therefore, "only a claim

that states a plausible claim for relief survives a motion to dismiss." *Id*. (citation omitted).

### III. ANALYSIS

Plaintiff's Second Amended Complaint alleges two claims: 1) Termination of Naples Bay Hotel Contract Due to Material and Adverse Change to the Offering and 2) Breach of Contract. Defendant moves to dismiss both claims.

#### A. Count III - Termination of Naples Bay Hotel Contract Due to Material and Adverse Change to the Offering

Defendant moves to dismiss Count III of the Amended Complaint on the ground that Plaintiff failed to include essential allegations necessary to establish a right to relief (Dkt. 72, p. 3). Defendant also argues that Plaintiff's attempt to rescind the contract is untimely. *Id*. at pp. 3-4. Furthermore, Defendant contends that Plaintiff's claim is contradicted by the attached exhibits to the Second Amended Complaint because the Prospectus specifically states that the Island Parcel would be developed subject to regulatory permitting. *Id*. at p. 4. In opposition, Plaintiff argues that Defendant failed to notify him of the change in the offering, namely the inclusion of the Island Parcel, and therefore, his right to terminate the contract continued unabated (Dkt. 74, p. 3). In addition, Plaintiff contends that "[t]he issue of governmental regulation restricting development ha[d] no bearing on the developer's obligation to notify prospective purchasers." *Id*. Plaintiff emphasizes that Defendant was obligated to notify him of any changes in what was promised in the contracts. *Id*.

Section 718.503(1)(a)(1) of the Florida Statutes requires sellers of a residential unit for a contract with an unexpired term of more than five years to provide a specific provision in the contract allowing the buyer to deliver written notice of his intent to cancel the contract within 15 days after executing the agreement. Additionally, the buyer of the residential unit may also cancel

the contract by delivering written notice of his intent to cancel "within 15 days after the date of receipt from the developer of any amendment which materially alters or modifies the offering in a manner that is adverse to the buyer." Fla. Stat. § 718.503(1)(a)(1). Notably, the change to the agreement must be both material and adverse; any other changes to the agreement do not permit the buyer to cancel. *See Mastatler v. Hollywood Ocean Group, L.L.C.*, 10 So.3d 1114, 1116 (Fla. 4th DCA 2009)(holding that the addition of nine cabanas by a pool was a materially adverse amendment to the initial contract to purchase a condominium); *BB Landmark, Inc. v. Haber*, 619 So.2d 448, 449 (Fla. 3d DCA 1993)(finding that the increase in the cost of extras from $10,384 to $17,122 was a material and adverse change giving rise to the buyer's right to cancel the contract); *see also D&T Properties, Inc. v. Marina Grande Assocs., Ltd.*, 985 So.2d 43, 50 (Fla. 4th DCA 2008)("[T]he $90 change attributable to the multimedia system was not a material one that gave rise to the buyer's right to cancel under section 718.503(1)(a)."); *Oceania Joint Venture v. Trillium, Inc.*, 681 So.2d 881, 885 (Fla. 3d DCA 1996)("[T]he substitution of a new developer was not a material adverse change."). "[A]n objective test is appropriate to decide whether an amendment amounts to a 'material' alteration or modification of an offering under section 718.503(1)(a)-would a reasonable buyer under the purchase agreement find the change to be so significant that it would alter the buyer's decision to enter into the contract?" *D&T Properties, Inc.*, 985 So.2d at 49.

Here, the Hotel and Marina Agreements include the provision required by Section 718.503(1)(a)(1). "If any amendment materially modifies the Condominium Documents in a manner adverse to Purchaser, Purchaser shall have fifteen (15) days after receiving the amendment within which to reject the revised Condominium Documents. If Purchaser rejects such an amendment by written notice to Developer within fifteen (15) days, Purchaser may terminate this Agreement and

receive a prompt refund of all deposits paid to Developer or Escrow Agent under this Agreement, without interest" (Dkt. 41, Ex. A, ¶15, Ex. B, ¶14, Ex. C, ¶4). Furthermore, "[f]ailure to notify Developer of rejection within the fifteen (15) day period shall be deemed a waiver of the Purchaser's right to terminate this Agreement." *Id*. Here, Plaintiff attempts to terminate the Agreements pursuant to this provision.

### 1.     Notice and Time to Terminate Agreement

Defendant argues that Plaintiff's attempt to rescind is untimely. First, it argues that Plaintiff does not allege that he received an amendment in order to terminate the Agreements under Section 718 (Dkt. 72, p. 3). Second, Defendant claims that based on Plaintiff's allegations, he learned that the Island Parcel was not developed and was no longer planned to be developed in either March or April of 2008. *Id*. at pp. 3-4. However, Plaintiff did not seek to terminate the Agreements under Section 718 until September 4, 2009 when he filed his Complaint. *Id*.

The Court finds that Plaintiff has alleged sufficient facts to survive a motion to dismiss under Rule 12(b), Fed. R. Civ. P. The Court agrees that Plaintiff does not state in his Second Amended Complaint that he received any amendments from Defendant relating to the development of the Island Parcel (Dkt. 40, ¶41). But Plaintiff does state that when he asked Defendant's agent, Peter Carroll about the development of the Island Parcel, "Carroll would not specifically respond to [Plaintiff's] questions regarding the completion and availability of the Island Parcel." *Id*. at ¶32. Plaintiff then states that he contacted local government agencies in Collier County and learned that no permits for the Island Parcel had been granted. *Id*. at ¶33. Plaintiff continues by saying that Defendant did not obtain government approval, the Island Parcel was not delivered at the time that a demand to close was sent, and the Island Parcel will not be delivered in the future. *Id*. at ¶43.

Plaintiff also alleges that all conditions precedent to this action have occurred, been performed, waived or otherwise satisfied. *Id.* at ¶21. Assuming all facts are true, the Court finds that the Plaintiff has sufficiently stated facts that he properly notified Defendant of his intent to rescind.

### 2.     Material and Adverse Change of Offering

As part of the offering, Defendants offered Club Facilities.[2] All purchasers were required to be members of the Club, and the price of membership was included in the total price of the unit in the Condominium (Dkt. 51, p. 17). Specifically, the Prospectus states:

> Membership in the Club is included in the price of a unit in the Condominium. Out of the proceeds received from the sale of each unit at closing, the Developer will make payment of a refundable $20,000.00 deposit to the Club Owner on behalf of each unit purchaser.
> . . . .
>
> **THERE IS A CLUB MEMBERSHIP ASSOCIATED WITH THIS CONDOMINIUM. MEMBERSHIP IN THE CLUB IS MANDATORY FOR UNIT OWNERS**.

*Id.* (emphasis in original).[3]

The Club Facilities included a yacht club room, a fountain, a swimming pool, a captain's room, a clubhouse, a heated swimming pool, six tennis courts, a tennis pro shop, parking, and a pool deck, all of which were to be located on East and West Parcels of the Development (Dkt. 51, pp. 18-19). In addition, the Club Facilities included the Island Parcel and a water transport vessel to transport approximately fifteen (15) people from the West Parcel to the Island Parcel (Dkt. 51, p. 19). As outlined in the Prospectus:

---

[2] The Club Owner, however, is Knightsbridge Partners of Naples, LLC, an affiliate of Defendant (Dkt. 51, p. 16).

[3] *See* Dkt. 41, Ex. A, p. 1-2

> The Island Parcel improvements are subject to regulatory permitting. The plans call for a beach facility of approximately 1,800 square feet with an additional 1,125 square feet of screened area for a total of 2,295 square feet with a capacity for fifty-six (56) people. **If regulatory approvals are not obtained, the plans will need to be changed to accommodate applicable requirements.**

*Id*. at p. 18 (emphasis added).

In the Second Amended Complaint, Plaintiff states that the Island Parcel was a unique feature of the Naples Bay Resort in comparison to other resort communities (Dkt. 40, ¶28). Plaintiff was informed via letter that the Units in The Hotel Agreement that he purchased were complete, and he would need to schedule a closing between February 26, 2008 and March 17, 2008 (Dkt. 40, ¶29; Dkt. 64, Ex. J). Plaintiff received a similar letter directing him to schedule his closing for a boat slip,[4] which was "substantially complete," that he purchased under The Marina Agreement (Dkt. 40, ¶30; Dkt. 65, Ex. K). He was directed to schedule this closing between March 7, 2008 and March 31, 2008. *Id*. Plaintiff was also instructed to complete the membership application form for The Club and return it to the sender prior to the closing. *Id*.

After receiving these notices, Plaintiff contacted Peter Carroll, an alleged agent of Defendant, for information on the completion of the Island parcel in April 2008. *Id*. at ¶31. Plaintiff states that Carroll did not respond to his questions about the completion and availability of the Island Parcel. *Id*. at ¶32. Plaintiff then contacted local government agencies in Collier County to learn that no

---

[4] "For the purchase price of $240,000.000 (the "Purchase Price") Developer agrees to sell Unit C-09 (the "Unit") of The Marina Condominium at Naples Bay Resort (the "Condominium") . . . together with the exclusive right to use, but not ownership of, the slip (the "Slip") bearing the same number as the Unit located within The Marina at Naples Bay Resort (the "Marina"). Purchaser agrees to buy (I) the Unit and (ii) a license granting exclusive right to use the Slip in accordance with the terms and conditions of this Agreement (the "License.")" (Dkt. 42, Ex. B, p. 1).

- 8 -

permits for the Island Parcel had been granted. *Id*. at ¶34. Plaintiff concluded that the Island Parcel was not developed and is no longer planned for development in March or April 2008. *Id*. at ¶36. However, Plaintiff never received a formal written notice from Defendant that the Island Parcel would not be delivered. *Id*. at ¶41.

Based on Plaintiffs' allegations in the Second Amended Complaint and the attached exhibits, the Court finds that Plaintiff has sufficiently alleged that the development of the Island Parcel was material to the offering under both the Hotel and Marina Agreements (Dkt. 40, ¶38). Plaintiff states the Island Parcel was an exclusive beach-front facility that materially increased the value of his purchase, and the beach was not accessible to the public (Dkt. 40, ¶¶34-35). As such, Plaintiff states a claim upon which relief can be granted.

### B. Count IV - Breach of Contract[5]

Defendant moves to dismiss Count IV on the grounds that Plaintiff failed to properly state where the promise to deliver the Island Parcel to Plaintiff appears in the contract or what section of the contract was purportedly breached (Dkt. 72, p. 4). In response, Plaintiff identifies three sections relating to The Club and the related Island Parcel (Dkt. 74, p. 4). Plaintiff specifically references paragraph 16 of the Complaint, identifying The Club in Exhibit D (*see* Dkt. 51, p. 13), paragraph 24 identifying The Club Facilities in the Offering Plan (*see* Dkt. 51, pp. 16-20), and paragraph 25, identifying the Purchase Agreements that require Plaintiff's membership in The Club (*see* Dkt. 41, Ex. A, p. 1, Ex. B, p. 1) (Dkt. 74, p. 4).

In his Second Amended Complaint, Plaintiff alleges that all purchasers were required to be

---

[5] Plaintiff requests the same relief that he seeks in Count III for a violation of the same provisions of the Purchase Agreements. The Court assumes that Plaintiff asserts this Claim in the alternative.

members of The Club at Naples Bay Resort, as set forth in the Prospectus (Dkt. 40, ¶16). The Club included the Island Parcel. *Id*. Because Plaintiff was obligated to be a member of The Club, he was charged $20,000 for each of his condominium units and his boat slip, as required by the Purchase Agreements, totaling $60,000. *Id*. at ¶25, Ex. 41, Ex. A, p. 1, Ex. B, p. 1. The Island Parcel has not been constructed. *Id*. at ¶49. Therefore, Plaintiff seeks a return of all the funds that he placed as a deposit for the condominium units. *Id*. at ¶¶18, 68.

The Court finds that Plaintiff has alleged facts to state a claim for breach of contract. Plaintiff pointed to specific provisions in the Prospectus and Purchase Agreements referencing the mandatory membership in The Club, the Island Parcel, boat slip, and required deposits. The Island Parcel was not constructed. Defendant holds or has the benefit of Plaintiff's deposits, which total $305,000. Additionally, Plaintiff states that he concluded that the Island Parcel would not be constructed in March or April 2008 but never received a formal, written notice from Defendant regarding the construction of the Island Parcel. Plaintiff has alleged the existence of a contract, a breach of the contract and damages flowing from the breach. Therefore, Plaintiff has stated a claim upon which relief can be granted.

## IV. **MOTION FOR ATTORNEYS' FEES**

Along with the Motion to Dismiss, Defendant also includes a motion for an award of attorneys' fees (Dkt. 72, p.6). Because the case has not been considered on the merits, Defendant's motion for attorneys' fees is premature. Therefore, the Court will defer ruling on Defendant's Motion for Attorneys' Fees.

Accordingly, it is hereby **ORDERED:**

1. Defendant's Motion to Dismiss the Second Amended Complaint and Motion for Attorneys' Fees (Dkt. 72) is **DENIED in part** and **DEFERRED in part**.

2. The Court **DENIES** Defendant's Motion as to Counts III and IV of the Second Amended Complaint.

3. Defendant's Motion for Attorneys' Fees is **DEFERRED** pending the resolution of this case. Defendant may re-file its Motion for Attorneys' Fees at the conclusion of this case.

4. Defendant shall file an Answer to the Second Amended Complaint within the time provided by the Federal Rules of Civil Procedure.

**DONE AND ORDERED** at Ft. Myers, Florida, on July 14, 2011.

*Charlene Edwards Honeywell*
Charlene Edwards Honeywell
United States District Judge

**COPIES TO**:
COUNSEL OF RECORD